## Herring's Estate.

*Francis H. S. Ede*, for rule; *Smith & Paff*, contra.

STEWART, P. J., April 9, 1928.—This is a petition for a commission to take testimony of witnesses in California. The petitioner set forth that he is a resident of San Francisco, California, where he has resided continuously for the past twelve years. He gives no street address, and upon the argument his counsel stated that he had never written to him at any street address, that he addressed his letters to the General Post-Office, San Francisco. He also avers that he formerly lived in Pen Argyl, Pennsylvania, and "left that vicinity approximately twenty years ago and did not disclose his whereabouts until March, 1926." He also avers that he "is unable to present himself before your Honorable Court because of the great amount of expense which he would have to incur in traveling from California, together with the loss of wages, which expense would not be justified in accordance with the amount of money he would be entitled to under the will of the said Elizabeth Ann Herring." That will provided that the residue should be paid "unto Foster Amy, if found within six months after my decease, one equal share." On the argument, it was stated that the amount of that share was $1000. An answer was filed to the petition, but no replication. The answer set out the very great delay in the settlement of this estate; that the executor, desiring to be informed whether Foster Amy was, in fact, alive, had requested the address of petitioner to be given to him, and that counsel refused or neglected to do it; that the executor himself had made an investigation and was utterly unable to find the whereabouts of Foster Amy, and that he did not believe he was alive. (On the argument, it was stated that the investigation was made through a firm of attorneys in San Francisco.) It was also stated upon the argument that the signature of Foster Amy was submitted to witnesses, and that they did not believe it was his signature. We filed an opinion in this case on Jan. 2, 1928, in which we called attention to the great delay in the settlement of this

estate and fixed a time-limit of sixty days for the production of proof before the auditor that Foster Amy was alive. Nothing was done until almost the expiration of that time, to wit, Feb. 27, 1928, when the present petition was presented, although we understand one or two meetings were had before the auditor.

While it is true that a claimant or a plaintiff need not be personally present at the trial (see Kichline v. Nolf, 12 Northamp. Co. Repr. 279, and Hibbs's Exec'rs v. Robinson et al., 28 Dist. R. 781), nevertheless, when the essential matter in dispute is the existence of a claimant, and where the claimant admits that he concealed his existence for twenty years and still refuses to disclose his street address, the case looks suspicious, and if he is guilty of some offense under our law, as was suggested on the argument, we ought not to aid him in any attempt to obtain immunity from our laws. Not only will the present proceeding cause delay, but it will entail expense on the estate. It was suggested that a bond would be given to cover expenses of the commission and of counsel fees. That might be done in some cases, but we do not think this is that kind of a case. To establish the existence of Foster Amy under the circumstances which he himself has created would involve the examination by interrogatories and the cross-examination of a number of witnesses in California, while a ten minutes' appearance by him in Pen Argyl would settle the question at once. The whole matter is one of money. If he prefers to remain concealed in California, he will forfeit the $1000. If that sum induces him to return to his former home, it is up to him to do it, provided he was not in default when he first disclosed "his whereabouts." There is no difficulty about our power to order a commission. All question has been set at rest by the Orphans' Court Act of June 7, 1917, § 20 (b), 2 and 3, P. L. 363, which provides for commissions and for oral testimony before an examiner. So much of our Rule of Court, § 59, which provides that a rule for a commission may be entered of course, is abrogated, but the balance of the section remains. It should be borne in mind that, under section 255, the rules of the Common Pleas apply to the Orphans' Court. This matter has been passed on by Judge McKeen in two cases, Loveland et al. v. Roberts, opinion filed Feb. 11, 1924, and the same plaintiffs against Willis, opinion filed May 10, 1926. Neither of these cases seems to have been reported, but we follow them, and they hold that before a commission can issue, the court, in the exercise of its judicial discretion, must be satisfied that it is a proper case to have a commission. It also ought to be borne in mind that the petition should set forth the name and address of the proposed commissioner and the names and residences of the witnesses and the subject-matter of the testimony expected: Carter, Exec'r, v. Blair, Admin'r, 10 Dist. R. 749, and Hodell Furniture Co. v. Leonard et al., 17 Pa. C. C. Reps. 513. Both of these cases were approved by the Supreme Court in Force's Petition, 265 Pa. 228. In addition to the other cases referred to in Force's Petition, see Sims v. Cooper et al., 27 Dist. R. 471, where the court allowed the commission on facts similar to the present case so far as residence was concerned, but entirely dissimilar so far as the subject-matter was concerned, and Bleakley's Estate, 28 Dist. R. 289, where President Judge Criswell reviewed the cases and made an order in which he showed that the better practice would be to follow section (b) 3 of the act. While, perhaps, not germane to the present proceeding, we think it proper to say that the auditor should fix a day certain for a meeting, after consulting with counsel, and if Foster Amy appears, hear him. If he does not, end this matter.

And now, April 9, 1928, rule to show cause why a commission should not issue is discharged.　　　　　From Henry D. Maxwell, Easton, Pa.